The Illinois Appellate Court's Fifth Division is now in session. The Honorable Justice Mathias W. DeLore is presiding. Please be seated. Good afternoon, everyone. Welcome to the Illinois Appellate Court, First District, Fifth Division. We have one case on the docket for today. The clerk will call the case. 1-21-1241, People v. Rodney Carrasquillo. At this point, we're going to ask the attorneys who are going to argue to step up very briefly to introduce themselves. Good afternoon, Your Honors. My name is Charles Hoffman. I represent the appellant, Rodney Carrasquillo. Good afternoon. Matthew Connors on behalf of the people of the state of Illinois. All right. Thank you, Counsel. You may be seated for a moment. We always love to have members of the public here. Courts in our country are open to the public. We want to make sure you understand that in this court, we follow a very formal procedure. The appellant gets 20 minutes to argue. The state will get 20 minutes as well. And then the appellant will get five more minutes in rebuttal. It is not appropriate to speak out during our hearing today. The judges have read everything that is in the record and in the briefs. We are here today for you to answer our questions and to summarize your cases to us. We realize in a case like this that there are many concerns that people have that have caused them to be here today, whether it be for one side or the other. We are here to judge the case based on the law as enacted by our legislature and the law as explained by our Supreme Court. And that is what is going to guide our decision today. We have a number of marshals in the courtroom today to keep order, and they will be quick to act if there are any disruptions. With that being said, Mr. Hoffman, you may proceed when ready. Thank you, Justice DeLore, Your Honors. May it please the Court. Again, my name is Charles Hoffman. I represent the appellant, Ronnie Karaskiel. I'm going to limit my remarks today to Issue 1 in our brief, but of course I'll try to answer any questions this Court may have on Issue 2. Mr. Hoffman, I want to apologize for interrupting you for a second. We don't normally use this courtroom because this is the wrong day for us. I'm just noting that, is the clock working? Yeah, it's an hour. It's on old time, Judge. It's on the old time? Yeah. We'll go on for an hour and ten minutes. I'm sure you'd like to, but all right. I'm going to pretend I'm in Denver right now, and we're going to get you to 1230. Okay, thank you. I'm sorry, Mr. Hoffman. That's fine. Thank you again. This is the second time Ronnie has been before this Court seeking sentencing relief under our Constitution's proportionate penalty clause. In his previous appeal, he appealed the circuit court's denial of leave to file his successive post-conviction petition. That court held that Ronnie couldn't establish prejudice under the cause and prejudice test for a successive post-conviction petition because he wasn't serving life without parole. And you have to be serving life without parole under our Supreme Court's precedent in order to have a proportionate penalty clause based on your juvenile brain development. This Court on appeal, the earlier appeal, disagreed with the circuit court's finding that there was no prejudice. This Court remanded specifically for a hearing to give Ronnie the opportunity to show, and I quote, how the evolving science on juvenile maturity and brain development that formed the basis for Miller v. Alabama applied to his specific facts and circumstances. Given that opportunity, Ronnie presented evidence of his dysfunctional family environment, his immaturity, his impetuosity, and the negative influence of peer pressure, all of which occurred during his formative years. Most significantly, he presented the expert report of forensic psychologist Dr. Antoinette Kavanaugh. She opined that at the time of this offense that Ronnie was convicted of, his 18-year-old brain was similar in development to a 17-year-old minor's brain. That evidence actually established the sole remaining issue, that Ronnie had to prove in this litigation to be entitled to the constitutional protections applicable to the sentencing of juveniles in criminal cases. But rather than grant relief, the trial court again denied relief. And surprisingly, the trial court did it on the same ground that it had denied relief to appeal before, and that is the court said Ronnie's 200- to 600-year-old sentence was parole eligible. So relief under the proportionate penalties clause was unavailable. Now, Mr. Hoffman, the circuit court here held an evidentiary hearing. It was a third-stage hearing, is that correct? That's correct. All right. And issued a very lengthy opinion explaining its reasoning for doing what it did. That's correct. What do you contend is our standard review of that decision? The standard of review of the judge's factual decisions is abuse of discretion, and the way in which the trial court applied the law to the facts is de novo review. Now, as you noted, the defendant here was 17 when he committed the crime. Eighteen, Judge. I'm sorry, 18. Yes. I was flipping the parts of my sentence. You contended that he should be judged as a 17-year-old, right? Yes. All right. And that was what the expert witness testified to? Yes. As she's examining someone who's now in his 60s, is that correct? That's correct. Okay. Did the circuit court judge explain any particular reasoning as to whether or not that particular expert's four-decade retroactive opinion was credible or not? Yes. The judge expressed the view that the expert's opinion was very credible, and in our briefs we explained what the judge said about it. The judge said that the expert presented substantial evidence regarding Ronnie's brain development at the time, and the judge, in his written order, if I have that here, which I don't, but it's in the briefs, in his written order he said that the expert was credible, that she found that Ronnie's brain, based on his specific circumstances, as the Harris, the Ole Miss Supreme Court ruled in Harris, that she not only filed a report based on 40 years, but she looked at all of Ronnie's prior records. She took into account all of the things that people had said about how Ronnie was back in those days. And, Justice Szilard, what the circuit court said was, you put on substantial evidence that your brain was 17. You fit the circumstances of a juvenile. But you know what? I don't even have to reach that in this case. And the judge didn't reach it. What he said was, you're parole eligible, ipso facto, you don't have the benefit of the proportionate penalties clause. And I've had this position now for about 10 years. And it's been an interesting 10 years because, over that time, the law has evolved with respect to juvenile offense. Absolutely. Sorry. And we're always watching and clicking on our computers to see what the Ole Miss Supreme Court is telling us this week about this evolving theory of sentencing for juvenile criminal defendants. Correct. We would not, you wouldn't be here at all today, right? We're not for Dorsey? Or what case do you most strongly rely on from the Ole Miss Supreme Court to get over the hurdle of that he was 18 when this occurred rather than 17? Well, Judge, I believe that it was Harris. Harris. And Hauss. Yes. Who said, the Ole Miss Supreme Court said, we're not going to do numbers, just plain numbers like the U.S. Supreme Court does. It's more of how a person has developed. And in Harris and in Hauss, and I think even earlier in Thompson, the court said, if you're under 21 years of age but you can show that your brain development is similar to a juvenile, you fit into Miller v. Alabama. You fit into Buffer. You fit into the developing law that you've described that says we have to treat you constitutionally like a 17-year-old minor. Has that answered your question? Yes. And in your prayer for relief, you've got a couple bullet points here. Putting aside the bullet point of you're asking for us to reduce the sentence in order of immediate release from prison. Right. You conceded that if we were to grant lesser relief, such as remanding for a new sentencing hearing, that he could still be sentenced to life even under the case laws that exist today. Is that correct? No, Your Honor, and here's why. Okay, why? He has proven all of the elements necessary to be treated as a juvenile. That's not my question. Oh, no, I'm getting to your answer. It's a long answer, but I'll be as short as I can. The state has conceded that he's rehabilitated. So you've got a rehabilitated juvenile who has never had a constitutional sentencing hearing. At a new sentencing hearing, the only way Ronny Caraschio could get more than 40 years pursuant to people versus buffer is if the sentencing judge said, you are beyond rehabilitation. You are incorrigible. Theoretically, that's the possible finding. I know that's not what you're contending. You don't believe the facts support that. But theoretically, if the court made such a finding, there could be a life sentence. Is that correct? If the court made such a finding, the court could impose a life sentence. But that would be a complete abuse of discretion because under buffer, a defendant in Ronny Caraschio's position cannot be sentenced to more than 40 years imprisonment. And given this record and given the state's concession that he's been rehabilitated, the only way that the judge could give more than 40 years is to completely ignore all of the evidence, rule in the opposite direction of this evidence. So I'm confident that Ronny could not get more than 40 years. I can't imagine what evidence, what aggravating evidence the state could possibly come up with in this case. Given Ronny's record in prison, given all the things he's accomplished in prison, Judge, I think, of course, a court can sentence anybody to anything, but that doesn't make it constitutional. My question was framed as far as the statutory framework for this particular. And here's the reason that a new sentencing hearing wouldn't provide complete justice in this case. Ronny Caraschio has already served 46 years in prison. That's six more years than a de facto life sentence. On this record, every additional day he serves in prison is unconstitutional. It's an unconstitutional deprivation of his constitutional rights. This is the second case I've had here involving a judge who was implicated in Greylord. Right. A conviction entered by a judge implicated in Greylord. That was Gacho, Your Honor. Yes. Yes. And, you know, it's mentioned in the briefs. Right. But that really doesn't have anything to do with our analysis, does it? Not on Issue 1, Judge. Okay. We mentioned it in Issue 2 because the appellate court, this court in the previous appeal, mentioned it in terms of why the previous appellate court was mistaken in finding that not this panel, but this court acknowledged that they had gotten Ronny's age wrong in the direct appeal, that they had gotten the number of shots that struck the victim in this case wrong, and they said, and by the way, we note that Ronny got one of the harshest sentences that Judge Wilson ever imposed in a year when he was found to have taken a bribe to an 18-year-old with no prior convictions. So it's a little bit relevant to Issue 2, but not Issue 1, Justice DeLorde. Thank you. Anyway, I've told the court what the circuit court did below. We believe that that ruling was both legally correct and against the manifest way to the evidence. It was legally incorrect for two reasons. First, it violated the law of the case. This court in the previous appeal found that Ronny Carrasquillo was serving a de facto life without parole sentence because he had never had a meaningful opportunity for release based on his demonstrated maturity and rehabilitation because the Prisoner Review Board kept denying parole solely based on the seriousness of the offense. And second, the court applied an incorrect rule. Doesn't the parole board have the right to do that? The parole board does have the right to do that. However, we added a case, People v. Cavazos, to this. And here's one instance when the parole board doesn't have the right to deny parole solely based on the seriousness of the offense. The Cavazos case was based on the new Juvenile Parole Act. And that court held that those defendants today have a right that Ronny Carrasquillo didn't have back in the day. They have the right for the parole board to be required to consider youth and all of the factors that go along with youth. And they said, that's fine. People now who are convicted under the age of 21 who go before the parole board after 20 years, that meets Miller's requirements. But the Cavazos court said, of course, we're not saying that we would allow a sham parole hearing. And by that they meant the parole board can't find that a person has been completely rehabilitated and then deny parole solely based on the seriousness of the offense. That reasoning in Cavazos totally applies here. The parole board has found, at least since December 2016, that Ronny is completely rehabilitated. The state concedes that he's rehabilitated. Now, counsel, did the state concede that or did they not at all strike that? They didn't address the evidence that the doctor had submitted. They just did not respond to that at all because they felt that there was no need to respond to it unless the young man was determined to be 17, but he wasn't. So there was, well tell me, I don't recall the state conceding that there had been demonstrated rehabilitation. The state didn't concede that, Justice Lyle, in the circuit court. The state conceded it before this court in their brief at page 17. The state says Ronny Periskeel has demonstrated substantial rehabilitation since his incarceration. Now, at the last, he's had a parole hearing since this case came to the appellate court. Yes. And what were the results of that hearing? There have been two hearings since the first opinion from this court. My memory is that in 2020, about six months after this court's opinion, the parole board denied parole by a vote of 7 to 6. A few months ago, the parole board denied parole by a vote of 8 to 1. They're moving in the opposite direction. And was the prosecutor, I'm sorry, just one more question for me. Was the prosecutor, I understand that the prosecutor, Tom Rain, appeared at one of the parole hearings? The most recent one, Justice Lyle. Okay. Justice Navarro. I apologize. That's okay. So if we're counting votes, there have been hearings in which Mr. Periskeel has received votes in favor of parole. Some votes. Right? Not all of them. He was required to get eight votes, a majority of the board. Yes. And in 2019, he received seven votes. I believe so. I believe so. And in 2020, he received seven votes. Seven votes of 14 from the parole board. Is that correct? I don't know if it was six or seven, Your Honor, but it was close, yes. Okay. So in terms of when we're going back to your remarks about sham hearing or never being granted an opportunity for parole, he's been one vote away from parole. He has been one vote away. Most recently, he was seven votes away. But I want to stress to this court, we're not asking this court to overrule the parole board. We're not asking for parole. The parole board does what it does. What we're saying is, and I'm not arguing it's a sham hearing. I was just using the language from Cavazos. Here's what we're arguing. We're not asking this court for parole. What we're asking this court to do is to apply the law that Justice Stillart mentioned that has been evolving over the years on the right of juveniles to have their youth and its attendant characteristics considered at sentencing. Mr. Hoffman, let me interrupt you. I think your prayer for relief is, in fact, greater than the relief granted by the parole board. You're asking for us to release the defendant. Part of your prayer for relief is to have the defendant released, effective our opinion. Yes, but not on, well, I guess if he got released, he would be on parole for five years. But we're asking for judicial relief. This court has the power under Supreme Court Rule 615B4, I believe it is, to reduce a sentence in the interest of justice. That's our first request for relief. But don't we only have that power when the sentence itself is being appealed on a direct appeal? I don't think I've heard that twist to it before on a post-conviction. That's an interesting question, Justice Stillart, and I don't know the answer to it. I'd be happy to research that if you'd like and provide an answer. If we can't find the answer, we'll get back to you. Okay, but, you know, 6 of 1. And you've got two minutes left. All right, well, let me wrap up then. Let me ask you one other question. Sure. Since Judge Maldonado issued his opinion, have there been any developments from the Illinois Supreme Court on the jurisprudential issues we've been talking about that would color what he did in one way, either positively or negatively? There is one case, People v. Wilson, which neither side has cited in this case. And we didn't cite it because it's completely distinguishable from this case. Wilson held that under the Eighth Amendment, a discretionary life sentence doesn't violate Miller as long as the judge, you know, in other words, if a judge has the authority to impose a life sentence, the courts are going to assume that the judge did so appropriately. But Wilson doesn't apply here. Number one, Wilson was only an Eighth Amendment case. We have a proportionate penalties case. And, in fact, Wilson court denied relief under the Eighth Amendment and remanded it to the circuit court to decide the proportionate penalties claim. So there's no law from that case. And the second thing is, the reason Wilson doesn't apply is because Wilson says if a judge has the discretion to impose a life sentence, we're going to assume the judge applied it correctly. Well, ironically, Judge Wilson didn't have the authority in Romney's case to impose a life sentence. There was no life sentence in 1977. What we're arguing is it's a combination. We acknowledge this case is very unusual. I don't know that there's another case in which a petitioner has alleged that a parole-eligible sentence was transformed into a not parole-eligible offense. But what we're arguing is the combination of Judge Wilson giving a 200 to 600-year parole-eligible sentence in combination with the parole board finding Romney rehabilitated. And I urge this court to read the parole board's minutes. I don't think there has ever been a finding by any prisoner that shows such rehabilitation. He runs mentorship programs in the prisons. I'll wrap it up. Your time is up, so I'm going to ask you to wrap up, and then you'll get five minutes at the end. Thank you, and I thank the court for its time and attention. Thank you. Mr. Connors, you may proceed when ready. Thank you. Thank you. Good afternoon. May it please the Court. Matthew Connors on behalf of the people of the State of Illinois. People have three primary contentions in this case, each of which leads to the conclusion that the circuit court's order denying post-conviction relief was proper. First, this court needs to be mindful of the procedure of posture in this case. Posting counsel led his argument, as he did in each of his filings, with the assertion that he was entitled to an evidentiary hearing pursuant to People v. Harris. That's in page 9 of his reply brief. This claim is directly rebutted by the opinion where this court said, in paragraph 112, we reverse the trial court's February 21, 2018, order that denied leave to file a successive post-conviction petition and grant him leave to file. Period. The end. There's nothing else. All of the language that counsel has been relying upon is in the body of the opinion where the court is discussing Harris and those cases discussing the evolving case law about juveniles and emerging adults. And this court is well-versed in the three-act post-conviction hearing process. We all know that you don't immediately jump from leave to file to a third stage evidentiary hearing. And that's not what happened here. We had the filing of a, quote, verified successive post-conviction petition of leave on September 11, 2020. The people filed a motion to dismiss on December 4th of 2020. And then that motion was denied on February 18 of 2021. And then that third stage evidentiary hearing was conducted on June 22nd and June 28th, with the circuit court's ruling occurring on September 13, 2021. So this is not a case where the circuit court was given a limited remand for a specific purpose. This is not a case that hinges solely upon a question of whether or not Petitioner was able to find an expert somewhere that would establish he was a juvenile due to his unique attendance circumstances and background. Instead, the question before this court is whether or not the dismissal order and the claim made by Petitioner, which is that his sentence violates the Illinois Proportionate Penalty Clause, was inappropriate. So now we look at what was actually heard at that hearing. So at that hearing, the circuit court expressly said that, I do not find that Mr. Carrasquillo has been eligible for parole or that he is somebody who has been sentenced to life in prison without the opportunity for parole. He has had the opportunity for parole. He's not been given parole, but he's had the opportunity. Now, the circuit court continued in its oral statement that, although Petitioner did present evidence as to prevailing science regarding youth and the attendance circumstances in general and as applied to him, but before I can reach that matter, I did have to consider the address of the possibility of parole. So the circuit court's order is correct because we don't get to that threshold question about whether or not Petitioner is akin to a juvenile without determining whether or not his sentence is that of a life without parole. Defendant's entire argument hinges upon that buffer line of cases with a talismanic number of 40 years. We don't reach that point because cases like the U.S. Supreme Court in Montgomery v. Louisiana said that a state-made remedy in Miller violation by permitting juvenile homicide offenders to be conserved for parole rather than by resentencing. Now, Mr. Carras, you mentioned what you characterize as the talismanic number of 40 years. As we sit here today reading the tea leaves from the 20th floor at the Illinois Supreme Court, what is the status of 40 years as a maximum sentence for someone like this defendant who committed the crime when he was already 18? Well, we don't have anything, contrary to representations made by counsel, challenging the notion that there is this emerging adult conclusion. We have cases such as Thompson, such as Harris, where the Supreme Court has said, you have been given leave to file in order to flesh out whether or not you are eligible as an emerging adult. Or in, I believe it was Thompson, where they said you didn't raise the as-applied challenge in the petition, therefore you cannot raise it now. There hasn't been a statement that you are entitled to this relief. Is there been a contrary statement as to defendants who were under 18 when they committed the crime? As to the 40 years. Since Buffer? Since Buffer. Buffer is the standard law that hasn't been altered. So that's what we're looking at. No, we're not, because we don't get to that threshold question of 40 years because we have the eligibility for parole. And that's what's relevant. Do you believe that's a distinction with the difference in this case? It has to be, because the Supreme Court said in Dorsey that we have to consider things like day-to-day, good-time credit, not the actual issuance of credit, but whether or not there's a possibility for it. Dorsey is what the circuit court relied upon below to determine whether or not the petitioner was eligible for release. Most recently, another division of this court decided Papal v. Elliot and explicitly said this is not a de facto life sentence since he is eligible for parole. In that case, the defendant was given an excessive term over 40 years, but said you have the opportunity for parole, ergo you don't meet your burden. Now, the other thing that needs to be touched upon is an argument that counsel has made repeatedly throughout his brief and before this court that the opportunity for parole is illusory. It's not something that ever happened. Justice O'Mara, you pointed out that we only have a number of the most recent en banc proceedings. We have 2013. It was a 12-3 vote denying. 2016, 7-6. 2020, 6-7. 2021, 6-7. And then 2023, 8-1. But what we don't have, and it's something that's worth commenting on, is the wider body of decisions that were not presented by a petitioner. It's the petitioner's burden to come before this court and say, I was deprived of my opportunity for parole. He can't do that. We have, it's unclear. There's a reference at one point to 25 different parole hearings. There's one at 30 parole hearings, and he's been denied at each. But we have no idea what was made in those decisions. We do have some evidence that one of the former chairs of the parole board indicated that he would never receive a parole because of the nature of the victim. Is that in the record also? Yes, but we also have a concession, page 7 of defendant's brief, where defendant conceded that two people were granted relief in 2021 for murdered Chicago police officers. That was Johnny Veal and Joseph Hurst. And it should be noted that in both of those cases, the defendants have served three 51 years. So is the magic number 50? No. There's no magic number then. And then we need to look at the facts on each of those other parole hearings to determine whether there is a parity or whether there is some distinguishing feature between this defendant and those. No, that's absolutely incorrect, Your Honor. I was wondering because you just brought it up, so I thought that's what you wanted the court to do. No, Your Honor. As this court put in its previous decision, paragraphs 98 through 103, an action against the board is not a vehicle for defendant's constitutional claim that his sentence violates proportionate penalties. And this is not an action against the board? Your example precisely was that, Your Honor. It was engaged in a comparison of decisions made by the board. Okay. The Illinois Supreme Court and the U.S. Supreme Court both said that you cannot use parole board. I would reference this court's decision, and Hanrahan v. Williams cited in People's Brief. It is an incorrect vehicle to use the appellate court to challenge a decision made by the parole board. So the petitioner's argument is actually an attempt to backdoor a challenge to the parole board's decision-making process to meet his burden of showing he's been denied his opportunity for parole. I understand your characterization, which is fair argument, all right, but as I read the defendant's brief, they're arguing not that we should overrule the parole board, but rather there's a separate independent route for him to get some relief from his sentence under the current case law. Would you read it that way? No, Your Honor, because how can the petitioner meet his burden of establishing that the opportunity for relief is illusory without necessarily challenging the 25 to 30 opportunities he's had for that relief? He can't establish each one of those opportunities was somehow infirm without, one, addressing them, which we don't have in this record, and, two, asking this court to look at the en banc minutes, which have been attached to the brief, to the record, and say, look at these, Your Honor. These en banc minutes demonstrate a point, as Justice Alito said, well, we'll allow it in this case, but not in that case. That's clearly sitting in a review capacity over a judicial proceeding, but a non-judicial proceeding. Well, I want to clarify, that was certainly not my point, because we don't have to consider the other cases to make a decision in this case. I'm very clear on that. I'm sorry, I misunderstand your point. No, you, I did not say that we should consider the other two cases. I was responding to you, that we should consider the other two individuals who received parole. The facts for us are what we decide upon. If I may, Your Honor, the question I understood, and maybe I answered it incorrectly, petitioner offered in Evans an affidavit by a former member of the parole board, which said, there are members of the board which would not vote for release. That's the fact. That's what I said. The people presented to en banc report, and it's where they said people have matched these characteristics, were granted relief, and in his reply brief, petitioner acknowledged the mere fact that he has not been granted relief can't be based upon the fact that he murdered a police officer based upon those findings. That's in the reply brief, I believe, at 9. So I apologize if I misunderstand your argument, or I'm attempting to put words into your mouth. That's clearly not my intention, Your Honor. What I am saying is that petitioner has invited this court to engage in appellate review of proceedings which this court in its previous decision said is not appropriate. The court has the ability to look at whether or not under the proportionate penalties clause, strike it. Just go ahead. Let someone else ask you a question, because I don't, I'm not trying to debate with you, because that's just not. I don't, I'm trying to answer your question. I understand. And you're doing a wonderful job. I understand. Mr. Connors, just proceed. So if we, if this court's previous decision, which states that it is inappropriate to raise a challenge to the decisions of the parole board through a vehicle, especially through a collateral attack in a PC hearing, petitioner can't meet his burden of establishing he's sentenced to a sentence of natural life without parole. If that is the determination, this court does not need to proceed further to engage in an analysis of whether or not petitioner presented sufficient evidence at the evidentiary hearing to say he has, he is akin to a juvenile for the purposes of this kind of analysis. So that's the first threshold, is whether or not that is appropriate. But if we look at it again, what is the remedy? The remedy is finding that the circuit court erred, and then what? It's not to necessarily issue a sentence, as Justice Schwartz said. Section 15 is allowed to correct on direct appeal. So it's to allow remand for resentencing. We know that if there's resentencing, petitioner would be in the same situation where he appears before the parole board, the very parole board that he has said offers an illusory promise of review. Again, to review his new sentence, because he will have served the requisite 20 years. So even if this court were to order a new sentencing hearing, he would immediately be eligible for review of that sentence under the new statute, which would have put him before the same body that he is saying is currently not offering the constitutional protections that he is claiming he should be afforded. So it's a circular argument that leads back to the same point. So remind me, a prisoner in this defendant's stance, do they get unlimited opportunities to appear before the parole board, or is it only once per year, or is there a schedule to it? There is a schedule that they have multiple votes. And again, the only information that's available stems from 2013. There are two votes at a parole board hearing. There is the vote on the request for release for parole, and then there's what's called a three-year set-aside. So you can either vote to allow a hearing each calendar year or a three-year set-aside. So this court is aware you have the 2013 to 2016. So they voted to deny parole and voted in favor for a three-year set-aside. Again, in 2016, you had the denial of parole and then a three-year set-aside. And then, interestingly, there was a sua sponte ruling in 2017 that was raised by a member of the prisoner review board, where they asked to revisit that three-year set-aside, and that did not pass. But you do have the opportunity for either an annual or— So was there anything that happened in 2019 then? No. They have 2020, 2021, and 2023. I'm not clear on your answer. So you're saying something did happen in those years? Yes. There were votes in— To deny, deny, deny, which are the ones you've been talking about. Yes. Okay. Those were those years. Yes. So what we do not know is the first parole board hearing likely would have been in 1997, if we go 20 years from either the date of conviction of 77 or the date of sentencing of 78. So it would have been 97 or 98. For the 2023 parole hearing? Yes. That was an unfavorable vote, correct? Yes. Did they do a three-year set-aside at that point? I do not have that information available. I believe that was attached to opposing counsel's motion. Okay. We'll let him answer that. Yeah, I think. Regardless, are you telling us that now under another new statute, the three-year set-aside is sort of a loser and you can go back in late 2023 and try again? We don't know. This is another— This is another situation we don't know. It would assume, depending on when this decision is made, when it's remanded to the circuit court, all of those factors, we wouldn't know. Okay. Just minor points regarding the supposed concession and the evidence regarding a defendant's status as a juvenile. Defendant refers to page 17 of the People's Brief, which is the opening paragraph, and he quoted, the record reflects that although petitioners demonstrated substantial rehabilitation, the predicate of that sentence is members of the Parole Review Board have nonetheless denied his request for release. That is not a reference to anything which occurred at the circuit court at the evidentiary hearing that was solely confined to matters before the Prison Review Board, which, again, puts us back in that same situation that this Court already rejected in its previous opinion, where he's attempting to relitigate Parole Review Board issues on appeal. And as to the motion to cite additional authority, the people do highlight that in pages 50, 58, in all of those cases, the appellate court in People v. Caviezo said, defendant's sentence is not a de facto life sentence because defendant cannot ignore that he found him eligible for parole and that eligibility is triggered at 20 years and accordingly before the equivalent of a life sentence. So virtually every court has held that the possibility of parole is sufficient in and of itself to demonstrate that you don't have a life sentence without possibility of parole. The paragraph allotted to me by counsel, paragraph 59, discusses the possibility of a sham parole board hearing. That's actually only referencing an Illinois Supreme Court decision, I mean an Iowa Supreme Court decision, and in that case the petitioner brought suit against the Iowa Parole Board pursuant to the Iowa Administrative Procedures Act. So, again, we have a proceeding which is directed at the parole board in an administrative hearing. We don't have that in this case, and there's nothing that would stop this court petitioner from pursuing an action against whatever infirmities that he thinks that there is in the parole board through executive clemency, through a federal mandamus, or a federal habeas claim. He can do any of those things and seek review of the parole process. We have two minutes left. What we cannot do is rely upon this court to look at 1, 2, 3, 4, 5 of the 25 to 30 parole opportunities that he has had to meet his burden of showing that he has met his burden of showing that his sentence is a natural life without the possibility of parole. And if this court has no further questions. Do you know whether or not the defendant has had a ticket since other than the one that was referred to in the briefs? Just one hour ticket? No information. I would have no information regarding the parole board or any of those matters. No, that would have been through the state. But I'll find out from this attorney. If there are no further questions, for all these reasons, in the state of the people's brief, we ask this court to deny a defendant's argument and affirm the circuit court's ruling. Thank you. Thank you, Mr. Connors. Mr. Hoffman, you get the last word. You've got five minutes. Justice DeLordis, I will sit in there. I remember two other Illinois Supreme Court cases on this subject area, Williams and Moore, which held that Miller doesn't provide cause for an emerging adult. But we're not relying on Miller for cause. We've extensively briefed that question when Ronnie filed his 1987 first PC. He couldn't have raised a proportionate penalties claim because, at that time, he had no idea that he was going to end up serving a de facto life without parole sentence. And as soon as he reached 42 years incarcerated, that's when he filed his proportionate penalties claim, he got a two-year set this year for parole. He got a two-year what? A two-year set for the next parole hearing. Oh, set, okay. Yes. Justice Lyle, he's gotten one ticket in prison since 1999. That's also unheard of. Counsel talked about opportunity for parole and eligibility for parole, and there are a lot of cases that throw that language around. But eligibility for parole, opportunity for parole, those are simply shorthand for what the real law is, that the person has to have a meaningful opportunity for release based on demonstrated maturity and rehabilitation. Counsel mentioned Dorsey. Dorsey held, and in Dorsey, the court took Miller's Eighth Amendment reasoning and applied it to our proportionate penalties clause and said, under Illinois law, a youthful defendant is entitled to, quote, a meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation before spending more than 40 years in prison. Ronnie Karestio has already spent more than 40 years in prison, and he has never had a meaningful opportunity for release based on his demonstrated maturity and rehabilitation. Mr. Hoffman. Yes. If I can interrupt you again. Sorry. Ronnie, the meaningful rehabilitation, could the parole board consider Mr. Karestio's denial of the offense for which he's been convicted and for which the appeals have been affirmed or his appeals have been denied? You mean if he claimed that he was innocent of the offense? Denied the offense for which he's been convicted. Ronnie has never denied that he was responsible for the murder of the victim in this case. Or rather, has he admitted discharging the firearm that caused the death of the victim in this case? Absolutely. The one thing that Ronnie doesn't acknowledge is that he intentionally shot Officer Loftus. And if you look at the record of the trial, if you look at the record in the first PC, well, first of all, Judge Wilson didn't find him guilty specifically of intentional murder. Ronnie was charged with intentional and knowing murder, and there was a general finding by the judge. But this crime has so, as awful as it was, Ronnie, who had been drinking at night, ran out to see a gang fight. He fired some shots from a distance of 150 feet away, which is half the length of a football field. Officer Loftus was in plain clothes, in the middle of this gang melee, trying to break it up. Ronnie, in trial, testified he only tried to fire above the crowd to break up the gang fight. And the evidence is clear. One shot went into the second floor window of an abandoned YMCA building. One shot went into the first floor window. And a third shot struck Officer Loftus. There's no way that Ronnie could have known that he was intentionally shooting a specific individual in that crowd. There's no question Ronnie was guilty of knowing murder, because he committed an act, shooting, in the direction of a crowd of people, that was likely to cause death or great bodily harm. And Ronnie has acknowledged that from the beginning. Prosecutor Green gave a letter at one parole hearing in which he said, I've been a prosecutor for decades, and I'll tell you, from the moment I stepped in that courtroom, I could tell Ronnie Carrasquillo was remorseful. Have you ever heard a prosecutor acknowledge that in a criminal case? No. Here's the analogy. Does that answer your question, Justice Navarro? It does. Thank you. One minute. One minute. If I have one minute, let me conclude. 64-year-old Ronnie Carrasquillo has been locked up, incarcerated, in Illinois prisons for 46 years, eight months, and one week for a crime he committed at the age of 18 years and five months. Over the last four decades, Ronnie has become a mature, responsible, God-fearing person. He's earned the right to be restored to useful citizenship, as our Constitution requires. And we're asking this Court, if it can, to reduce Ronnie's sentence, and if it can't, to send it back for a new sentencing hearing. And I want to add one more thing. This Court, in the previous PC appeal, necessarily had to find that Ronnie was serving the equivalent of a de facto life sentence. Why? Because leave to file a successive post-conviction has to be denied when the claim would fail as a matter of law. That's Smith from the Illinois Supreme Court. If Ronnie Carrasquillo isn't serving the equivalent of a de facto sentence of life without parole, the appellate court never would have remanded it for a Harris hearing because it would have failed as a matter of law. That's what this Court held before. Ronnie showed he's been rehabilitated, and his brain development is similar to a juvenile's. Please, send Ronnie Carrasquillo home. Thank you for your time and attention. We thank counsel on both sides for their very thorough and professional arguments. The Court will take the matter under advisement, and you will hear from us in due course.